UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLOS GABRIEL ESTEVEZ,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

No. 3:19-cv-1362 (MPS)

**RULING ON § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Carlos Gabriel Estevez seeks to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on the ground that his trial lawyer rendered ineffective assistance of counsel. He claims that the lawyer failed to advise him of a second plea offer made by the Government, that he unduly delayed the filing of a motion for a new trial based on Estevez's claim that two jurors had seen him in handcuffs, and that he failed to object to the prosecutor's leading questions to Government witnesses. For the reasons set forth below, his motion is DENIED.

**I.    BACKGROUND**

Beginning in 2013, Estevez drove his uncle, Fernando Estevez, around Connecticut and New York to assist the uncle in conducting his heroin trafficking activities. Presentence Report, *United States v. Estevez*, No. 3:14CR00191(MPS), ECF No. 332 ("PSR") ¶ 9. After the uncle traveled to the Dominican Republic in May 2013, Estevez carried on the heroin trafficking activity in Connecticut and New York. A co-conspirator estimated that he transported 30 kilograms of heroin for Estevez after the latter took over for his uncle. PSR ¶ 26. Estevez was arrested in September 2014, PSR ¶ 28, and indicted federally. In December 2015, after a six-day trial in which Estevez was represented by Attorney John Calcagni, a jury convicted him of two

1

counts: possession with intent to distribute and distribution of heroin (Count 4) and conspiracy to do the same (Count 1). PSR at 1.

In June 2016, the Court sentenced Estevez to 126 months imprisonment and 5 years supervised release. Judgment, *Estevez*, No. 3:14CR00191 (MPS), ECF No. 376. Estevez appealed to the Second Circuit; the Circuit affirmed the judgment in a summary order in May 2018. *United States v. Estevez*, 735 F. App'x 746, 750 (2d Cir. 2018). The Second Circuit issued the mandate on July 24, 2018, transferring jurisdiction over the case back to this Court. *Estevez*, No. 3:14CR00191 (MPS), ECF No. 411. Estevez filed this § 2255 motion to vacate, set aside, or correct his sentence on September 3, 2019. ECF No. 1.

## II.   LEGAL STANDARDS

### A.  Section 2255 Petition

Section 2255 permits collateral challenges to federal convictions. 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."). In deciding a Section 2255 motion, the court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A petitioner is therefore not automatically entitled to a hearing, and no hearing is required "where the allegations are vague, conclusory, or palpably incredible. To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also Pham v. United States*, 317

F.3d 178, 184 (2d Cir. 2003) ("It is within the district court's discretion to determine whether a hearing is warranted [in a Section 2255 case].").

"To warrant a hearing on an ineffective assistance of counsel claim, the [petitioner] need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted). "If material facts are in dispute, a hearing should usually be held, and relevant findings of fact made." *Id.* But the court "need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214.

### B. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court has held that this two-part test applies to ineffective assistance challenges in the plea bargain context, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), including when a defendant claims that ineffective assistance led him to reject a plea offer and instead stand trial. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.*

The performance prong of the two-part *Strickland* test requires a showing that "counsel's representation fell below an objective standard of reasonableness," in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688. "In applying this standard, a reviewing court

3

must make every effort . . . to eliminate the distorting effects of hindsight and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] might be considered sound trial strategy." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (internal quotation marks omitted).

With respect to plea-related claims of ineffective assistance, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate [both] a reasonable probability that they would have accepted the . . . plea offer had they been afforded effective assistance of counsel," and "a reasonable probability the plea would have been entered without the prosecuting canceling it or the trial court refusing to accept it . . . ." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see also Lafler*, 566 U.S. at 174 (Defendant must show "that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea."). With respect to trial-related claims of ineffective assistance, the critical question is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cohen*, 427 F.3d at 167.

### III. DISCUSSION

Estevez makes three ineffective assistance of counsel claims. He argues that Attorney Calcagni (1) failed to communicate the Government's second plea offer to Estevez before trial; (2) failed to object when two jurors allegedly saw Estevez in handcuffs during a court recess; and (3) failed to object to the Government's use of leading questions during direct examination of Government witnesses.

A. **<u>Ineffective Assistance in Connection with the Government's Second Plea Offer</u>**

Estevez alleges that the Government made a written plea offer with "favorable conditions for Petitioner . . . right before the trial started," but that Attorney Calcagni "did not inform Petitioner" of this second offer. ECF No. 1 at 18–19. He states the "offer was of 60 months' imprisonment or 70 to 87 months." *Id.* at 18. Estevez claims he heard about this second offer for the first time on July 7, 2019 (*i.e.*, years after the trial), from his wife. *Id.* at 18.

The Government argues that these allegations "are not supported by the record." ECF No. 15 at 15. It submits a detailed affidavit from Calcagni, which states that he received a second proposed plea agreement from the Government in September 2015 that "essentially reduced Mr. Estevez's mandatory minimum exposure from 10 years to 5 years, upon conviction," and that he "met with [Estevez] in person to discuss it." Calcagni Aff., ECF No. 15-1 ¶ 3. Calcagni attests that he met with Estevez about this second offer, discussed it, and that Estevez decided to decline the offer, at least in part because Estevez was not a U.S. citizen and "wished to proceed to trial in an effort to both win his case and remain in this country." *Id.* ¶¶ 3–4. Calcagni attaches a letter dated September 11, 2015, that notifies the Government that "after consulting with my client . . . he has authorized me to notify the government that he elects to exercise his constitutional right to proceed to trial." ECF No. 15-3. The letter indicates that it was copied to Estevez. *Id.* Based on this evidence, the Government argues that Estevez has not shown that Calcagni was ineffective during the plea-bargaining process or that he was prejudiced by any alleged ineffective assistance.

During the plea-bargaining process, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. . . . When defense counsel allow[s an] offer to expire without advising

5

the defendant or allowing him to consider it, defense counsel d[oes] not render the effective assistance the Constitution requires." *Frye*, 566 U.S. at 145. To establish *Strickland* prejudice in the plea-bargaining context, a defendant must show "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Where, as here, a defendant alleges that ineffective assistance led to the rejection of an offer (because it allegedly was not communicated to the defendant), "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

Estevez's claim fails because he does not make sufficient allegations to suggest he was prejudiced by any alleged ineffective assistance in the plea-bargaining process. Even if I accepted as true Estevez's claim that Calcagni did not notify him of the second plea offer before trial, Estevez would be unable to show prejudice because he has submitted no evidence that he would have accepted the second plea offer, ECF No. 1 at 38–39, while the Government has submitted evidence that he would not have—namely, Calcagni's affidavit reciting Estevez's concerns about deportation. ECF No. 15-1 ¶ 4. Estevez's petition argues that "at the evidentiary hearing, Petitioner will explain why he wanted to enter into a plea agreement instead of proceeding to trial," but the petition is not itself "competent evidence." *Gonzalez*, 722 F.3d at 131 (noting that a petitioner "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief"); *see also Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (noting that a

6

motion supported by a "sufficient" affidavit including detailed and controverted issues of fact warrants a hearing, but "bald allegations" unsupported by evidentiary facts do not); *Herzog v. United States*, 38 F. App'x 672, 675 (2d Cir. 2002) (affirming denial of § 2255 motion without a hearing where defendant was "unable to put forward any objective evidence establishing a reasonable probability that he would have accepted the plea" and "did not unequivocally state [in his §2255 affidavit] that he would have accepted the Government's plea offer but for [counsel's] allegedly deficient advocacy"). Because Estevez has pointed to no evidence supporting his allegations of prejudice, he has not shown a plausible claim of ineffective assistance in relation to the second plea offer.

In any event, Estevez is not entitled to a hearing on the performance prong of the *Strickland* test either. Second Circuit precedent on § 2255 motions "permits a 'middle road' of deciding disputed facts on the basis of written submissions." *Pham*, 317 F.3d at 184; *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (noting that a district court has discretion "to choose a middle road" of expanding the record by means of written submissions without requiring the live testimony of the movant and trial counsel). For example, "in cases involving claims that can be, and are often, made in any case, the judge may properly rely on his or knowledge of the record and may permissibly forgo a full hearing and instead request letters, documentary evidence, and affidavits to aid in its resolution of the claim . . . . The trial judge is also in a position, based on the knowledge gained in the underlying criminal proceeding and on his or her role as a trier of fact in the habeas proceeding, to hold that the particular petitioner had no chance of overcoming counsel's detailed explanation . . . ." *Puglisi*, 586 F.3d at 215.

In this case, ample evidence in the record shows that Calcagni did communicate the second plea offer to Estevez and that Estevez rejected it. Calcagni avers that he did, and the

September 11, 2015 letter to the Government, which indicates that it was copied to Estevez, provides support for Calcagni's testimony. Calcagni's sentencing memorandum, filed in May 2016, also supports his affidavit since it states that the government offered Estevez a plea deal "that would have allowed him to avoid exposure to a mandatory minimum sentence of ten (10) years" and would have yielded "an applicable guidelines range of 70 – 87 months." *Estevez*, No. 3:14CR00191 (MPS), ECF No. 363 at 5–6. The Government has therefore pointed to two pieces of objective evidence supporting Calcagni's affidavit, while Estevez has pointed to no evidence other than his own statement. That statement, which says only that "defense counsel did not inform Petitioner that the Government had offered a second plea agreement," ECF No. 1 at 39, is not properly sworn and was not made under penalties of perjury.[1] Even if it was a properly sworn affidavit, however, I would find implausible Estevez's version of events, which rests solely on his cursory, "highly self-serving and improbable assertion[]," *Chang*, 250 F.3d at 86, that Calcagni did not inform him of the Government's second offer. The assertion is improbable for at least two reasons. First, Estevez claims he learned of the second offer for the first time from his wife some three and a half years after the trial but does not explain how his wife learned of it and, more to the point, how she managed to do so without his learning of it for three and a half

---

[1] Although the statement appears in a document entitled "affidavit/affirmation," indicates that Mr. Estevez was "duly sworn," and is signed by Mr. Estevez, it does not indicate that it was sworn before a third party, let alone an officer authorized to administer oaths. ECF No. 1 at 37-39; *see* Black's Law Dictionary, Ninth Ed. (2009) (defining "affidavit" as "a voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths."). Nor does the document comply with the requirements of 28 U.S.C. § 1746, which permits unsworn declarations to be used as evidence, provided they state that they were made "under penalty of perjury." Further, Mr. Estevez, who is a citizen of the Dominican Republic, required the assistance of a Spanish interpreter throughout the proceedings before me. It is thus unlikely that he drafted the reasonably literate "affidavit" and not even clear if he read or understood it, especially given that it twice misidentifies his trial counsel as Steven Yurowitz, the lawyer who handled his appeal to the Second Circuit. ECF No. 1 at 38–39.

years. Second, Calcagni's express mention of the second offer in the sentencing memorandum strongly suggests it was conveyed to Estevez; it is implausible that defense counsel would point out in a public document submitted to the Court the existence of a plea offer that he never conveyed to his client. *See also supra* note 1. Even if Estevez had adequately alleged prejudice, therefore, I would find that the evidence in the record does not support a finding of deficient performance and that Estevez has failed to produce enough evidence even to warrant an evidentiary hearing.

For these reasons, I find that Estevez has not plausibly alleged ineffective assistance of counsel in relation to the second plea offer and it is not necessary to hold a hearing on the issue.

### B. Ineffective Assistance in Failing to Object to Use of Restraints in View of Jurors

Estevez's second argument is that two jurors saw him in handcuffs the day before the jury began deliberations and that his counsel failed to make a timely motion for new trial on this basis, thereby "depriv[ing] the trial judge of the opportunity to consider methods of minimizing the prejudice to Estevez." ECF No. 1 at 32. In his affidavit, he states:

> [T]he day before giving the case to jury for deliberation, two U.S. Marshals handcuffed Petitioner once out of the courtroom in front of two jurors. Once the marshals realized the presence of the jury, they pushed Petitioner against the wall and subsequently into an empty room. However, the two jurors, in complete surprise, only nodded their head and contemplated petitioner handcuffed in their presence. . . . Estevez informed his defense counsel. However, despite Estevez['s] repeated requests that his defense counsel bring the incident to the judge's attention, and file a motion for a new trial, defense counsel did not act immediately.

ECF No. 1 at 38.[2] Neither his affidavit nor his motion explains precisely when Estevez told Calcagni about this incident; he simply alleges he "informed his defense counsel." Estevez

---

[2] Note that this description of events is somewhat different, and even less plausible, than the one offered by Estevez in his motion for new trial, which was filed about four months after the trial. *Estevez*, No. 3:14CR00191 (MPS), ECF No. 339. In that motion, Estevez contended that the Marshals had placed him in handcuffs while he was still in the courtroom and that it was later,

9

argues that his counsel's "fail[ure] to preserve this issue or file a motion for a new trial or to give the trial judge the opportunity to minimize this prejudice . . . renders his performance ineffective," and that the jurors' observation of him in handcuffs was "inherently prejudicial." ECF No. 1 at 31–32.

The Government argues that Estevez has not made plausible allegations that his counsel was ineffective on this issue, especially in light of the evidence in the record and the Court's denial of Estevez's April 2016 motion for a new trial. Calcagni's affidavit explains that he filed the motion for a new trial based on Estevez's claim that two jurors had seen him in handcuffs, which "was only brought to [Calcagni's] attention after trial." ECF No. 15-1 ¶ 6. Calcagni also avers that he "did [his] best to investigate" the issue, "but was not very successful in doing so." *Id.* I denied Estevez's motion for a new trial, finding among other things that Estevez had offered "no admissible evidence to support [his] claim that jurors saw him in restraints." *Estevez*, No. 3:14CR00191 (MPS), ECF No. 355 at 11. I noted that none of the affidavits submitted in support of that motion were based on personal knowledge of the alleged incident; so none of them were admissible as evidence that any jurors saw Estevez in handcuffs.[3] In addition, as I explained in

---

while they were escorting him out the front doors of the courtroom into the hallway, that he was observed by two jurors. *Id.*, ECF No. 339-1 at 2. I observed the trial and it is my recollection that in this case, as in every criminal trial over which I have presided in which the defendant is in custody, the Marshals placed the handcuffs on the defendant while he was still in the courtroom and before escorting him out of the courtroom. The suggestion that the Marshals "handcuffed Petitioner once out of the courtroom in front of two jurors" is thus implausible, inconsistent with my own recollection of the proceedings, and insufficient to warrant an evidentiary hearing. *See Puglisi*, 586 F.3d at 215 ("The trial judge is also in a position, based on the knowledge gained in the underlying criminal proceeding and on his or her role as a trier of fact in the habeas proceeding, to hold that the particular petitioner had no chance of overcoming counsel's detailed explanation . . . .").

[3] Estevez sought to issue a subpoena to the Wyatt Detention Facility, the pretrial detention facility where he was housed during the trial, to identify the officers who transported Estevez to and from the trial, since Estevez claimed that he had discussed his alleged exposure to the jurors

10

my May 4, 2016 ruling, even Estevez's own description of the incident only speculates as to whether a juror actually saw him in handcuffs. *Id.* at 12. In the motion for a new trial, Estevez claimed:

> [T]he USMS placed Mr. Estevez into handcuffs and prepared to escort him to the cellblock. As they began to exit the courtroom, the marshals pulled Mr. Estevez back inside in a sudden and abrupt manner. Outside the courtroom and in the corridor stood one or more of the jurors in his case. Mr. Estevez encountered or was exposed to the juror(s), which prompted the USMS to pull him back inside.

*Id.*, ECF No. 339-1 at 2. Based on this description, and because detainees are typically handcuffed behind the back, "it is unlikely . . . that any juror actually saw restraints on him." *Id.*, ECF No. 355 at 12–13. Finally, I concluded that even if any jurors briefly saw Estevez in handcuffs, "any such glimpse would have been harmless" since "[m]ost jurors are aware that defendants may be incarcerated during trials." *Id.* at 13; *id.* at 13–14 (citing cases holding that a brief sighting of a defendant in handcuffs outside the courtroom is not inherently prejudicial).

In this § 2255 motion, Estevez still has not pointed to any admissible evidence to support his claim that jurors saw him in restraints; his own averments about what the jurors saw are, of course, speculative. More importantly, he has not plausibly alleged that Calcagni rendered ineffective assistance in response to the incident. Estevez's affidavit does not clearly state that he told Calcagni of the incident before the end of the trial; so the affidavit does not contradict Calcagni's more specific averments that the incident "was only brought to [his] attention after trial." ECF No. 15-1 ¶ 6. In addition, Calcagni avers that he "did [his] best to investigate" the matter, *id.*, and the text messages Estevez attaches to his motion show that Calcagni did attempt to collect evidence. ECF No. 1 at 42 (Calcagni told Estevez's wife, "I['m] gonna file the motion

---

with these officers. I denied that motion. Even if Estevez had obtained affidavits from these Wyatt officers, those affidavits would have been based on hearsay and would thus have been similarly inadmissible.

11

for new trial this week . . . . The motion will get filed. He should trust in that. I was not gonna file it without the appropriate evidence or else it would lose."). Estevez therefore does not plausibly allege that Calcagni acted unreasonably in the timing or the substance of the motion for a new trial. Nor does Estevez adequately allege prejudice: he points to no evidence suggesting that the outcome would have been different if Calcagni had acted differently, such as by filing the motion for a new trial sooner. I stated in my May 4, 2016 ruling that the motion for a new trial would fail on the merits even if it had been timely, and Estevez does not point to any admissible evidence supporting his claim that Calcagni failed to obtain. Because Estevez has not plausibly alleged ineffective assistance regarding this issue, I find there is no need for a hearing.

### C. Ineffective Assistance in Failing to Object to Leading Questions

Finally, Estevez argues that Calcagni rendered ineffective assistance by failing to object to the Government's use of leading questions on direct examination during trial. His § 2255 motion "incorporates and . . . re-rais[es] here the ineffective assistance claim presented in his direct appeal brief." ECF No. 1 at 36. In that brief, Estevez argued that "[d]efense counsel's failure to object to the government's blatant and repeated use of prejudicial leading questions is inexplicable," that "there could be no strategic reason for the failure," and that he "was substantially prejudiced by counsel's failure." *United States v. Estevez*, No. 16-1865 (2d Cir.), ECF No. 74 at 27.

The Government notes that the Second Circuit found that I did not abuse my discretion in allowing the government to ask leading questions during direct examination of witnesses at trial. *United States v. Estevez*, 735 F. App'x 746, 747 (2d Cir. 2018) ("Although the district court did allow some leading question on direct . . . . we see no abuse of discretion."). Furthermore, the

12

Government argues, a defense lawyer's decision not to object is a matter of trial strategy. Indeed, Calcagni avers in his affidavit:

> Sometimes objecting is fruitless and only serves to send a message to the trial jury that counsel (and his client) have something to hide or fear the evidence in the form of testimony to be elicited. As a trial strategy, it is my practice to object to questions very selectively, in accordance with the rules of evidence, and in a manner that comports with my developed trial strategy. Any failures to object on my part were conscientious and intentional, not due to oversight, negligence, or ineffectiveness.

ECF No. 15-1 ¶ 7.

I agree with the Government that Estevez has not alleged that Calcagni's failure to object "fell below an objective standard of reasonableness." "Decisions about when to object to questions—particularly on grounds of form—are strategic and, thus, absent extraordinary circumstances not present here, failures to object are not evidence of objectively unreasonable representation." *United States v. Donaldson*, 577 F. App'x 63, 66–67 (2d Cir. 2014); *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir.2005) (rejecting ineffective assistance claim based on failure to object because "decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics, and thus are virtually unchallengeable absent exceptional grounds for doing so" (internal citations and quotation marks omitted)). Estevez does not offer any evidence of "extraordinary circumstances" suggesting that Calcagni's failure to object to certain leading questions was anything other than strategic, other than to speculate in his brief that such failure was "inexplicable" and that "there could be no strategic reason for the failure." *Estevez*, No. 16-1865 (2d Cir.), ECF No. 74 at 27. These claims are directly contradicted by Calcagni's affidavit. And Estevez offers no evidence or allegation that I would have sustained any objections Calcagni did make, so he has not alleged prejudice. *See Donaldson*, 577 F. App'x at 67 (noting that the defendant "cannot show ensuing prejudice because objection likely would not have prevented admission of the resulting testimony, either because the district court would

13

have permitted the question to be answered, *see United States v. Salameh*, 152 F.3d 88, 128 (2d Cir.1998), or because the prosecution would have rephrased the question"). Estevez has therefore failed to allege plausibly that Calcagni acted unreasonably in not objecting or that he was prejudiced by the failure to object, and a hearing is not warranted.

## IV.     CONCLUSION

For the reasons set forth above, Estevez's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.


Dated: August 3, 2020
       Hartford, Connecticut

                                     /s/
                              Michael P. Shea, U.S.D.J.